Filed 7/10/14  D.C. v. Super. Ct. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| D.C.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | A141674<br><br>(San Francisco County<br>Super. Ct. No. JD13-3035) |

D.C., the mother of M.P., age four, petitions this court to set aside the juvenile court's order setting a permanent plan hearing pursuant to Welfare and Institutions Code[1] section 366.26.  She contends that the court erred in terminating her reunification services.  We deny the petition.

## I.  FACTUAL BACKGROUND

M.P. was detained following a referral from the police department that she was at risk as a result of mother's mental health issues.  On January 25, 2013, the police responded to mother's home after she claimed M.P. had ingested an unknown pill.  M.P. was taken to the hospital, "cleared," and released the same day.  In late January and again in February 2013, mother suffered a series of mental breakdowns including two requiring

---

[1] All further statutory references are to the Welfare and Institutions Code.

1

emergency psychiatric services. On February 11, 2013, the San Francisco Human Services Agency (the Agency) placed M.P. with her maternal grandmother.

A combined jurisdictional and dispositional hearing was held on April 10, 2014. The court sustained the allegations of a Welfare and Institutions Code section 300 petition, finding that M.P. was at risk of harm due to mother's mental health condition. The court also sustained the allegation that father's whereabouts were unknown. The court declared M.P. to be a dependent of the court and placed her with her maternal grandmother. The court ordered reunification services for mother.

The Agency's report, filed October 4, 2013, for the six-month review hearing recommended that reunification services be continued. It stated that mother had attended three visits with M.P. in late July and early August 2013, as well as visits on August 15 and September 16, 2013. Mother was loving and appropriate during her visits.

The report noted that mother was diagnosed with bipolar I disorder with manic, severe, and psychotic features. She was hospitalized in the psychiatric ward from May 22, 2013 until June 17, 2013, and then again from June 20 to July 16, 2013. After her release from the hospital, she was assigned a therapist and was treated at City Wide Focus, the highest level of mental health outpatient care in the county of San Francisco. Mother attended one visit with her psychiatrist on July 26, 2013, but missed her last two scheduled appointments on August 30 and September 10, 2013. She also missed two appointments with her therapist. The Agency further reported that mother continued to have difficulties with taking her medication.

The court held the six-month review hearing on November 5, 2013, and ordered that reunification services be continued.

The Agency's report for the 12-month review hearing dated February 25, 2014 recommended that reunification services be terminated because mother had made minimal progress on her reunification plan. She had attended only two supervised visits in December 2013, and had continued to miss scheduled visits. She missed seven visits prior to being terminated by the Western Addition Family Resource Center (WAFRC) in January 2014. She complained that the WAFRC was unsanitary for M.P. because she

noticed a piece of gum stuck on the furniture.  On January 24, 2014, mother requested that she be allowed to return to the WAFRC for visitation, but the center could not accommodate her.  The Agency requested another visitation center for mother's visitation.

The Agency also reported that mother was unable to comply with her medication requirements, thus altering her parental judgment.  On November 8, 2013, she took the drug ecstasy, resulting in her hospitalization in San Francisco General Hospital's psychiatric ward.

The report further noted that mother's participation with City Wide Focus had declined significantly and she was due to be terminated from the program.  Her psychiatrist discontinued her psychotropic medication in January 2014 due to her inability to follow the treatment plan.

The 12-month review hearing was held on April 18, 2014.  Geoffrea Morris, the child welfare worker assigned to the case, recommended that reunification services be terminated.  She testified that mother's progress on her reunification plan had been minimal to poor.  Mother failed to complete her services and did not continue with visitation.  She last visited with M.P. in December 2013, and had seen M.P. only periodically when she saw her with the maternal grandmother in the community.  Mother did not attend two visits that Morris set up for her at the Agency for the week before the hearing.  She did not inform the Agency that she was cancelling the visits, but the Agency learned from the maternal grandmother that mother would not attend.  Morris opined that mother was unable to visit consistently if she was not regularly taking her medication.  In total, Morris referred mother to five visitation centers and mother was terminated from each center.

Morris acknowledged that mother had renewed her participation with mental health services on March 19, 2014 and had completed parenting classes.  Mother, however, had not had a current prescription for medication for the six-month reporting period.

The court terminated reunification services, finding that mother continued to face significant mental health challenges. The court noted mother's pattern of not taking her medication consistently and her inability to stabilize her mental health so that she could reunify with M.P. successfully. The court further found that mother's visitation with M.P. had been inconsistent. The court set the matter for a section 366.26 hearing.

## II. DISCUSSION

Mother challenges the juvenile court's order terminating reunification services. She argues that the services provided were not reasonable or responsive to her mental health needs.

"In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the [Department]. We must indulge in all reasonable and legitimate inferences to uphold the judgment. [Citations.] 'If there is any substantial evidence to support the findings of the juvenile court, [we are] without power to weigh or evaluate the findings.' " (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1361–1362.)

Here, the record shows that the Agency vigorously sought to address mother's mental health issues with specific services. Due to mother's severe mental health issues, the Agency referred her to City Wide Focus, the highest level of mental health outpatient care in the county of San Francisco. She was assigned both an individual therapist and a psychiatrist, who was responsible for monitoring her medication on a monthly basis. While mother met with her psychiatrist in July 2013, she missed her scheduled appointments in August and September. Her progress after the six-month review hearing in November 2013 did not improve. She was hospitalized on November 8 for 48 hours and found to have ecstasy in her system. She also discontinued treatment with her therapist in November 2013. And she failed to keep her scheduled appointment with her psychiatrist in December 2013, resulting in the discontinuance of her psychotropic medication.

Moreover, mother was inconsistent with visitation. Although at the commencement of the dependency she visited M.P. at the home of the maternal

4

grandmother, these visits were terminated because the maternal grandmother could no longer supervise visitation due to the difficulty of managing mother. The Agency then set up visits for mother at several visitation centers. Mother, however, was terminated from a total of five visitation centers. Most recently, she was terminated from the WAFRC in January 2014. She subsequently failed to meet with Morris in order to complete the referral to a new visitation center. Morris made numerous attempts to contact mother but mother could not be located at her home or through her telephone numbers. In addition, mother failed to attend two visits that the Agency had scheduled just a week before the 12-month review hearing.

Mother argues that the Agency should have provided more services in connection with assisting her with medication compliance and visitation. She asserts that it should have been apparent to the Agency that mother had a problem with visitation occurring at visitation centers. We are not persuaded.

As the Agency points out, mother's belated challenge to the adequacy of the services provided is untimely. "If mother felt during the reunification period that the services offered her were inadequate, she had the assistance of counsel to seek guidance from the juvenile court in formulating a better plan." (*In re Christina L.* (1992) 3 Cal.App.4th 404, 416.) A parent may not "wait silently by until the final reunification review hearing to seek an extended reunification period based on a perceived inadequacy in the reunification services occurring long before that hearing." (*Los Angeles County Dept. of Children etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088, 1093.)

The record shows that the Agency sought to address mother's problems with visitation. These problems stemmed largely from her inability to confirm and attend visits. While she had one complaint about cleanliness at the WAFRC and another complaint about a male supervisor that she found distracting, these issues were addressed. The center was not the problem, it was mother's failure to attend the visits.[2] Indeed, after

---

[2] We note that in spite of mother's complaints, when she was able to visit, the supervisors of her visits found that she had a strong attachment with M.P. and that she was appropriate and loving in visits.

being terminated by the center, mother sought to have visits there but the center could not accommodate her.

As mother acknowledges, the Agency was not required to take her by the hand and escort her to services. (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) If a parent "waits until the impetus of an impending court hearing to attempt [to correct his or her behavior], the legislative purpose of providing safe and stable environments for children is not served by forcing the juvenile court to go 'on hold' while the parent makes another stab at compliance."[3] (*Ibid.*)

Moreover, the Agency was not required to offer mother additional services. Due to mother's severe mental health issues, the Agency placed mother with City Wide Focus, but mother was terminated from the program due to her failures to attend therapy sessions and appointments with her psychiatrist. Morris sought to keep in touch with mother to inform her of her various appointments but mother proved difficult to locate either at her home or by telephone. "In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) Given the extensive services offered to mother, we cannot conclude that the Agency failed to provide reasonable services.

---

[3] At the hearing, Morris testified that she received a letter from the Department of Public Health stating that mother was receiving mental health services at Mission Mental Health as of March 19, 2014.

## III.  DISPOSITION

The petition for an extraordinary writ is denied on the merits.  (§ 366.26, subd. (*l*).)  Our decision is final in this court immediately in the interests of justice.


_____
Rivera, J.


We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.